**UNITED STATES DISTRICT COURT**
For the
**Middle District of Tennessee**
**Nashville Division**

RECEIVED

DEC 0 4 2024

U.S. District Court
Middle District of TN

| | | |
|---|---|---|
| DANIEL LEO SCHMELING, | ) | Case No. |
| Plaintiff, | ) | Jury By Trial - Yes |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNSON ELECTRIC NORTH AMERICA, | ) | |
| Defendant. | ) | |

---

## COMPLAINT FOR A CIVIL CASE

### I. PARTIES

1. Plaintiff, Daniel Leo Schmeling, resides at 1364 Bluebonnet Drive, Clarksville, Montgomery County, Tennessee, 37042. Plaintiff is a former employee of Johnson Electric North America.
2. Defendant, Johnson Electric North America, Inc., is a corporation with its principal place of business located at 6 Research Drive, Shelton, Fairfield County, Connecticut, 06484.
3. Defendant conducts substantial business in Tennessee, including activities directly affecting Plaintiff's employment, making it subject to the jurisdiction of this Court.

### II. JURISDICTION AND VENUE

1. **Federal Question Jurisdiction:**
   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which prohibits employment discrimination based on race, color, religion, sex, or national origin.
2. **Supplemental Jurisdiction:**
   This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a). These state-law claims are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.
3. **Venue:**
   Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, specifically in Springfield, Tennessee, where Plaintiff was employed by the Defendant and where the alleged discriminatory acts took place.

4. **Procedural Compliance:**
   Plaintiff has fully exhausted administrative remedies as required by Title VII. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission (EEOC) and received a Right to Sue letter, dated October 7, 2024. A copy of the Right to Sue letter is attached as Exhibit A.
5. **Additional Basis for Jurisdiction**
   In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of Tennessee, and Defendant Johnson Electric North America is incorporated in Connecticut, with its principal place of business in Michigan.

## III. FACTUAL ALLEGATIONS

### A. Employment Background

1. Plaintiff was employed as IT Director at Johnson Electric North America, where he managed IT operations across the Americas region and contributed to Defendant's cybersecurity, infrastructure modernization, and compliance efforts.
2. Plaintiff consistently received high-performance evaluations and played a key role in implementing critical IT initiatives.

### B. Discrimination and Hostile Work Environment

1. Beginning in March 2022, Defendant's newly appointed Chief Information Officer (CIO) exhibited favoritism toward employees of Indian nationality, systematically sidelining Plaintiff and other non-Indian employees.
2. Disproportionate hiring and promotions within the IT department further exacerbated the hostile work environment. During fiscal year 2023, the percentage of Indian employees in IT rose from 30% to 70%, despite a hiring freeze across the region. Twenty employees of Indian origin were hired during this period, without proper adherence to corporate procedures.
3. Plaintiff was repeatedly excluded from key decisions central to his role, such as vulnerability patch management. Decisions regarding the SCCM project and IT security bypassed Plaintiff's input, despite his recognized expertise in these areas.
4. Critical projects, including those related to cybersecurity and server maintenance, were assigned to less qualified individuals of Indian origin. This systemic bias undermined operational efficiency and diminished Plaintiff's professional standing.
5. Defendant's management ignored Plaintiff's repeated reports of discriminatory practices, including resource allocation decisions that prioritized APAC operations over the Americas. Budget requests to address failing infrastructure in the Americas were consistently denied while APAC regions received substantial upgrades.
6. Senior management made public comments suggesting Plaintiff's replacement by a "good person of Asian descent," creating a hostile and discriminatory work environment.

7. Defendant's actions meet the standard for hostile work environment claims as established in Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), which requires conduct severe or pervasive enough to create an abusive workplace.

## C. Constructive Dismissal

1. Defendant relocated core IT operations to Chennai, India, effectively diminishing Plaintiff's responsibilities and rendering his position untenable.
2. Plaintiff was further undermined when access to critical tools necessary for his role, such as patch management systems, was denied. This hindered Plaintiff's ability to perform essential functions, including mitigating security vulnerabilities.
3. Upon resignation, Plaintiff was inappropriately asked by HR to assist in transitioning his responsibilities to a less qualified individual of Indian nationality, further disregarding his emotional distress and professional boundaries.
4. Under the principles established in Pennsylvania State Police v. Suders, 542 U.S. 129 (2004), Plaintiff's resignation constitutes constructive dismissal because the working conditions were intolerable.

## D. Breach of Contract and Denial of Benefits

1. Plaintiff's employment agreement entitled him to specific benefits, including payment for accrued vacation days and a prorated merit-based bonus under the Annual Incentive Plan (see Exhibit B).
2. Despite Plaintiff's repeated demands, Defendant failed to pay for 11 accrued vacation days valued at $6,076.92 and a prorated bonus of $17,551.50.
3. Defendant systematically rejected Plaintiff's budget proposals for critical infrastructure upgrades in the Americas, citing vague or unsupported reasons, further breaching the implied covenant of good faith and fair dealing.
4. Defendant's actions constitute a breach of contract and a violation of wage laws, as recognized in Gordon v. Kaleida Health, 299 F.R.D. 380 (W.D.N.Y. 2014).
5. Defendant's refusal to pay these amounts also breaches the implied covenant of good faith and fair dealing under Tennessee law, as articulated in Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684 (Tenn. 1996).

## E. Ethical Adherence and Necessity of Discovery

1. Plaintiff, as IT Director for Defendant, had access to sensitive and proprietary information critical to Defendant's business operations. To avoid any potential violation of intellectual property rights or ethical standards, Plaintiff refrained from retaining or extracting internal documents not personally owned.
2. Essential evidence supporting Plaintiff's claims, such as meeting records, hiring data, and internal communications, remains within Defendant's exclusive possession and control.
3. Plaintiff will rely on the discovery process to obtain this evidence in accordance with the Federal Rules of Civil Procedure.
4. Exhibit F includes text correspondence between Plaintiff and Defendant's HR Director, in which the HR Director assured Plaintiff that an investigation would be conducted.

However, no investigation was initiated, further supporting Plaintiff's claims of systemic neglect.

## F. Evidence of Disparities in Infrastructure Investment

1. Exhibit F provides a clear visual and operational comparison of the resource disparities between the APAC and Americas regions. While Springfield, TN, faced significant infrastructure vulnerabilities, including 496 unpatched systems, the APAC region received a state-of-the-art server room valued at approximately $1.5 million.
2. The patching plan within Exhibit F further underscores Plaintiff's proactive leadership in addressing these disparities. Defendant's refusal to implement these plans or allocate comparable resources to the Americas demonstrates discriminatory prioritization that undermined Plaintiff's ability to fulfill his role effectively.

## G. HR Acknowledgment and Lack of Investigation

1. Exhibit E contains a professional analysis by an HR expert detailing procedural failures within Defendant's HR department.
2. The expert concluded that HR neglected to investigate serious claims of discrimination and a hostile work environment despite receiving formal complaints from Plaintiff.
3. This lack of investigation directly contributed to the hostile work environment, as Defendant's HR department failed to uphold its policies and procedures, demonstrating a willful disregard for addressing systemic discrimination.

## IV. CAUSES OF ACTION

### Count I: Employment Discrimination (Title VII)

1. Defendant engaged in unlawful employment practices by favoring employees of Indian nationality in hiring, promotions, and resource allocation, in violation of Title VII of the Civil Rights Act of 1964.
2. Defendant's actions constitute unlawful national origin discrimination as defined by Staub v. Proctor Hospital, 562 U.S. 411 (2011), which established that discriminatory intent by decision-makers violates federal law.

### Count II: Hostile Work Environment

1. Defendant fostered a hostile work environment through exclusionary practices, discriminatory remarks, and favoritism, which undermined Plaintiff's ability to perform his job.
2. Defendant's actions meet the standard for a hostile work environment as outlined in Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).

### Count III: Constructive Dismissal

1. Plaintiff's resignation was the result of intolerable working conditions caused by Defendant's discriminatory practices.
2. Under the principles of Pennsylvania State Police v. Suders, 542 U.S. 129 (2004), Plaintiff's resignation constitutes a constructive dismissal.

## Count IV: Breach of Contract

1. Defendant failed to fulfill its contractual obligations by refusing to pay Plaintiff for accrued vacation days and prorated bonus compensation.
2. Defendant's actions constitute a breach of contract as recognized in Gordon v. Kaleida Health, 299 F.R.D. 380 (W.D.N.Y. 2014).

## Count V: Breach of Implied Covenant of Good Faith and Fair Dealing

1. Defendant's exclusionary practices, denial of benefits, and undermining of Plaintiff's role violated the implied covenant of good faith and fair dealing under Tennessee law.
2. This claim aligns with the principles articulated in Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684 (Tenn. 1996).

## V. RELIEF REQUESTED

1. Compensatory damages for lost wages and emotional distress totaling $260,000.
2. Payment of unpaid wages, including $6,076.92 for vacation days and $17,551.50 for bonus compensation.
3. Punitive damages in the amount of $1,500,000 to deter future discrimination.
4. Injunctive relief requiring Defendant to implement equitable workplace policies and compliance monitoring.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, I certify that this complaint:

1. Is not being presented for an improper purpose.
2. Is supported by existing law.
3. The factual contentions have evidentiary support.
4. Complies with the requirements of Rule 11.

**Respectfully submitted,**

November 23, 2024
/s/ Daniel Leo Schmeling
Daniel Leo Schmeling
1364 Bluebonnet Drive
Clarksville, TN 37042
931.216.8514

daniel.l.schmeling@outlook.com

**Enclosures**

**Exhibit A**: EEOC Right to Sue Letter
**Exhibit B**: Employment Agreement and Termination Provisions (includes vacation and bonus documentation)
**Exhibit C**: Plaintiff's Declaration of Workplace Exclusion and Discrimination
**Exhibit D**: Witness Testimony from Anthony Look
**Exhibit E**: Emails and Correspondence Regarding Budget and Tool Denials
**Exhibit F**: Communications Supporting Hostile Work Environment Claims
**Exhibit G**: VA Benefits Summary Letter

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on the following attorney for the Defendant by email and regular U.S. mail on this November 21st 2024

Mark D. Scudder
Barnes & Thornburg LLP
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
mark.scudder@btlaw.com

/s/ Daniel Leo Schmeling
Daniel Leo Schmeling

*PRESS FIRMLY TO SEAL*

*PRESS FIRMLY TO SEAL*

**PRIORITY MAIL**
**LEGAL FLAT RATE ENVELOPE**
**POSTAGE REQUIRED**

 

 **UNITED STATES POSTAL SERVICE**® | **PRIORITY**® **MAIL**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.
** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

RECEIVED

DEC 04 2024

U.S. District Court
Middle District of TN

# LEGAL FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED



PS00001000060

Legal Flat Rate Envelope
EP14L July 2022
OD: 15 x 9.5

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



uspa.com
$9.30
US POSTAGE
9405 5301 0935 5064 5005 50 0093 0001 0003 7203

U.S. POSTAGE PAID

11/26/2024     Mailed from 37042   200834171960003

**PRIORITY MAIL®**

DANIEL L SCHMELING
1364 BLUEBONNET DR
CLARKSVILLE TN 37042-1566

11/27/2024
Legal Flat Rate Envelope
**RDC 03**

**C019**

UNITED STATES DISTRICT COURT MIDDLE DIS
CLERK'S OFFICE
STE 1300
719 CHURCH ST
NASHVILLE TN 37203-7095

**USPS TRACKING #**

9405 5301 0935 5064 5005 50